1
2
3
4
5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF CALIFORNIA

7

8 GARY CRAIN,                                    Case No. 1:24-cv-00468-JLT-CDB (PC)

9                    Plaintiff,                   ORDER GRANTING DEFENDANTS'
                                                 REQUESTS FOR JUDICIAL NOTICE
10           v.
                                                 (Docs. 7-2, 11)
11 STATE OF CALIFORNIA, *et al.*,
                                                 FINDINGS AND RECOMMENDATIONS
12                    Defendants.                 TO GRANT IN PART DEFENDANTS'
                                                 MOTION TO DISMISS
13
                                                 (Doc. 7)
14
                                                 **14-DAY OBJECTION DEADLINE**
15

16         Pending before the Court is the motion of Defendants Officer A. Lwin and State of

17 California ("Defendants") to dismiss the operative first amended complaint ("FAC") and requests

18 for judicial notice in support thereof.  (Docs. 7; 7-2; 11 at 11-13).  On August 5, 2024, Plaintiff

19 Gary Crain ("Plaintiff") filed an opposition to the motion to dismiss and Defendants filed a reply

20 on August 15, 2024.  (Docs. 10, 11).

21 I.    **BACKGROUND**

22         On November 30, 2023, Plaintiff, a former inmate who is proceeding with counsel, initiated

23 this action with the filing of a complaint in the Superior Court of Kern County, Case No. BCV-23-

24 103996.  (Doc. 1).  The state action was removed to this Court on April 19, 2024.  (*Id.*).  Plaintiff

25 filed the operative FAC on June 21, 2024, asserting five claims against Defendants State of

26 California, California Department of Corrections and Rehabilitation ("CDCR"), inmate Melvin

27 Simmons, Officer A. Lwin ("Officer Lwin"), and Does 1 to 10.  (Doc. 6).[1]  Plaintiff alleges during

28 ───────────────────────

[1] Other individual and organizational defendants named in the original complaint were

the time he was an inmate at CCI, he was attacked by another inmate, Defendant Melvin Simmons, on January 2, 2023.  (*Id.* ¶¶ 11-12).  Plaintiff alleges that Defendant Simmons struck and stabbed him multiple times with a manufactured weapon resembling a knife.  (*Id.* ¶ 13).  Plaintiff alleges that despite him being the victim of Simmons's attacks, and prior to any less lethal force being used by any correctional officer, Officer Lwin intentionally deployed a projectile 40mm sponge bullet striking Plaintiff in the forehead, resulting in Plaintiff falling and bleeding from his head.  (*Id.* ¶¶ 13, 14).  Plaintiff alleges that Officer Lwin deployed a second sponge bullet that struck him again while he was being stabbed by Defendant Simmons and bleeding from the first sponge bullet.  (*Id.* ¶ 15).  Plaintiff alleges that as a result of Officer Lwin's actions, he suffered grave injuries, including a left subdural hematoma requiring decompressive hemicraniectomy and a traumatic brain injury.  (*Id.* ¶ 16).  Plaintiff alleges he presented a timely claim to the State of California on May 30, 2023, which was received on June 1, 2023.  (*Id.*).  Plaintiff alleges that he filed the instant action within six months of that date and that he thereby complied with all applicable claim statutes. (*Id.* ¶ 17).

In Claim I, Plaintiff alleges against Officer Lwin and Does 1 to 10 (collectively, "Officer Defendants") a violation of Plaintiff's Eighth Amendment right to be free from excessive force. (Doc. 6 at 5).  Plaintiff alleges the force was unnecessary for several reasons, among them being that: Plaintiff was the victim of the inmate attack, not the suspect; Plaintiff was on the ground being attacked by inmate Simmons using a weapon; instead of attempting to stop Simmons who was using a manufactured knife and was heard yelling that he was attempting to rape Plaintiff, Officer Lwin engaged in using 40mm sponge bullets to strike Plaintiff.  (*Id.* ¶¶ 19-23).  Further, Plaintiff alleges he did not have any weapons on him at the time of the incident, yet Officer Lwin used the launcher to shoot 40mm bullets at Plaintiff instead of subduing the attacker (Simmons) who was in possession of a knife.  (*Id.*).  Plaintiff alleges the force used was excessive given that no Officer Defendant attempted to use another less harmful or forceful method to subdue the altercation before the launcher was used.  (*Id.*).  Plaintiff also alleges that Officer Lwin intentionally attempted to

---

withdrawn in the operative FAC.  *Cf.* (Doc. 1 Ex. 1) *with* (Doc. 6).  Accordingly, those defendants were terminated from the action.  *See* (Doc. 13).

1  strike Plaintiff and had a vendetta against Plaintiff, given prior interactions where he was unusually

2  aggressive towards Plaintiff without provocation.  (*Id.* ¶¶ 24-27).

3        In Claim II, Plaintiff alleges an Eighth Amendment claim regarding conditions of

4  confinement and medical care against Officer Defendants.  (*Id.* at 8).  Plaintiff alleges that following

5  the incident, he was bleeding from his head, had substantial injuries, and faced a serious medical

6  need, namely a blunt head injury.  (*Id.* ¶ 22).  Plaintiff alleges he suffered a forehead laceration with

7  active bleeding, nose laceration with active bleeding, chest laceration, left arm puncture, right side

8  abdomen scratches, left knee abrasion, rear right shoulder laceration, back of left arm laceration,

9  lower back puncture wounds, and a left cheek abrasion at the time of the incident.  (*Id.* ¶ 34).

10  Plaintiff alleges the Officer Defendants took no actions to render immediate medical attention to

11  Plaintiff despite his obvious and active bleeding.  (*Id.* ¶ 35-37).  Plaintiff alleges that Officer

12  Defendants, instead of assisting Plaintiff, deployed additional force, including the use of a launcher,

13  further injuring him.  (*Id.* ¶ 38).  Plaintiff alleges Officer Defendants knew of his obvious medical

14  need and apparent head injury and disregarded it by failing to take reasonable measures in

15  summoning immediate medical aid.  (*Id.* ¶¶ 39, 40).

16        In Claim III, Plaintiff asserts a claim under Cal. Gov. Code § 845.6 for failure to obtain

17  medical care against Defendants State of California, CDCR, and Officer Defendants.  (*Id.* at 10).

18  Similar to his allegations in Claim II, Plaintiff alleges that despite his injuries and obvious active

19  bleeding, Defendants took no actions to render immediate medical attention to him.  (*Id.* ¶¶ 48-50).

20  Plaintiff alleges that Officer Defendants knew or had reason to know that he was in need of

21  immediate medical care as they visibly observed him bleeding from his head and lying in a pool of

22  his own blood coming from the blunt head injury as a result of Officer Lwin's shooting.  (*Id.* ¶ 51).

23  Plaintiff further alleges that Officer Defendants failed to take reasonable actions in summoning or

24  rendering to him immediate medical attention following Officer Lwin's shooting.  (*Id.* ¶¶ 52, 53).

25        In Claim IV, Plaintiff asserts assault and battery claims under state law against inmate

26  Simmons arising from his attack with a manufactured weapon resembling a knife that was

27  undertaken with the intent to harm Plaintiff.  (*Id.* ¶ 59).  Plaintiff alleges he suffered stab wounds

28  as a result of Simmons's attack.  (*Id.* ¶ 61).

In Claim V, Plaintiff asserts a negligence claim under state law against Officer Defendants and inmate Simmons.  (*Id.* at 12-13).  Plaintiff alleges Officer Defendants owed him a duty of care in the exercise of their actions so as not to create an unreasonable risk of injury to Plaintiff, and a duty of care not to use excessive force in performing their duties.  (*Id.* ¶ 65).  Plaintiff alleges Officer Defendants breached their duty of care to Plaintiff by their conduct, thereby causing injury to him and damages in an amount to be proven at trial.  (*Id.* ¶¶ 66, 67).

## II.   <u>APPLICABLE LAW</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's sufficiency and asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief).   A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the complaint."  *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1167 (E.D. Cal. 2010) (citing *Van Winkle v. Allstate Ins. Co*., 290 F. Supp. 2d 1158, 1162, n.2 (C.D. Cal. 2003)).  However, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Id*. at 1168 (quoting *Marder v. Lopez*,

4

450 F.3d 445, 448 (9th Cir. 2006)).  Accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002).  "A court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Hamilton*, 746 F. Supp. 2d at 1168 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).  The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## DISCUSSION

### A.    Requests for Judicial Notice (Docs. 7-2; 11 at 11-13)

Federal Rule of Evidence 201 permits a court to take judicial notice of any facts "generally known within the trial court's territorial jurisdiction "or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).  "Facts subject to judicial notice may be considered by a court on a motion to dismiss." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts ruling on 12(b)(6) motions to dismiss may take into

consideration "matters of which a court may take judicial notice"); *Pruitt v. United States Bank, N.A.*, No. 1:13-cv-01198-AWI-SKO, 2013 WL 6798999, at *1 (E.D. Cal. Dec. 20, 2013) (*citing In re Russell*, 76 F.3d 242, 244 (9th Cir. 1996)); *see Indemnity Corp v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record outside the pleadings).

Defendants make two requests for the Court to take judicial notice: (1) first, of the existence and content, although not the truth of any matters asserted, of Plaintiff's California Government Claim that is dated May 30, 2023 (Doc. 7-2, Ex. A); and (2) second, of the facts that on March 28, 2023, Plaintiff was released from state prison to parole, and remains on parole up to March 27, 2025, the anticipated end of his parole (Doc. 11 at 11-13); (*see id.* at 14-15 ("Hernandez Decl."), 17 (Ex. A), 19 (Ex. B)).

In support of the first request for judicial notice of Plaintiff's California Government Form dated May 30, 2023 (Doc. 7-2, Ex. A), Defendants argue that this document is relevant to and supports moving Defendants' motion to dismiss. (Doc. 7-2 at 1). Specifically, Defendants contend that this document establishes that Plaintiff did not comply with the California Government Claim Act ("GCA") claim-presentation requirement under Cal. Gov. Code §§ 945.4 and 950.2 as it relates to his third claim, the state law cause of action for failure to summon immediate medical care under Cal. Gov. Code § 845.6. (*Id.* at 2). Thus, Defendants contend that this document is a public record of which the Court may properly take judicial notice. (*Id.*).

In support of the second request for judicial notice of facts regarding Plaintiff's parole, Defendants argue that these facts are relevant to support their reply to their motion to dismiss the FAC. (Doc. 11 at 11). Specifically, Defendants assert these facts are relevant to their argument that Plaintiff is subject to the State of California's requirement that he exhaust prison administrative remedies before bringing suit regarding prison conditions because the state exhaustion requirement applies to both incarcerated persons and parolees. (*Id.*). Defendants contend that these facts, provided through the Declaration of N. Hernandez (*Id.* at 14-15) and prison records documenting Plaintiff's date of release from state incarceration and his placement on parole (*Id.* at 16-19, Exhs. A, B) are judicially noticeable as matters of public record. (*Id.* at 12). Thus, Defendants request that the Court take judicial notice of the following: CDCR records reflecting that Plaintiff's

1    incarceration with CDCR ended on March 28, 2023 (attached as Ex. A), and upon his release, he

2    was placed on parole until March 27, 2025, the current anticipated end of his parole (attached as

3    Ex. B).  (Hernandez Decl. ¶¶ 1-4).

4         The undersigned has examined Defendants' proffered information of the filing and contents

5    of Plaintiff's Government Claim Form and finds the first request suitable for judicial notice as a

6    matter of public record that can be readily determined from sources whose accuracy cannot

7    reasonably be questioned.  Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689

8    (9th Cir. 2001) ("a court may take judicial notice of matters of public record."); *see, e.g.*, *Gaines v.*

9    *Langurand*, No. 2:21-cv-00808-KJM-JDP (PS), 2024 WL 557527, at *3 (E.D. Cal. Feb. 12, 2024)

10   ("Courts routinely conclude that government claims are proper subjects of judicial notice.");

11   *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 811 (N.D. Cal. 2019) (taking judicial

12   notice of a government claim filed pursuant to the California Government Claims Act); *Kim v. City*

13   *of Belmont*, No. 17-cv-02563-JST, 2018 WL 500269, at *3 (N.D. Cal. Jan. 22, 2018) (taking

14   judicial notice of a government claim filed pursuant to the California Government Claims Act that

15   was referenced in the complaint but not physically attached to the pleadings); *Bustos v. City of*

16   *Fresno*, No. 1:20-cv-00066-DAD-BAM, 2020 WL 4748166, at *5 (E.D. Cal. Aug. 15, 2020)

17   (quoting *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 369 n.1 (2014) ("The court may take

18   judicial notice of the filing and contents of a government claim, but not the truth of the claim.").

19   Moreover, because Plaintiff refers to and relies on the government claim form in his complaint

20   (Doc. 6 ¶ 17) and because he does not oppose Defendants' request for judicial notice of the

21   document or otherwise challenge the authenticity of the document proffered, the Court considers

22   the contents of the government claim form to be true for purposes of ruling on Defendants' motion

23   to dismiss.  *See, e.g., Hamilton*, 746 F. Supp. 2d at 1168.

24        Further, the undersigned finds the second request regarding records of Plaintiff's parole

25   status suitable for judicial notice as a matter of public record.  Fed. R. Evid. 201(b)(2); *see Gardner*

26   *v. Newsom*, No. 1:20-cv-00240-NONE-SAB (PC), 2020 WL 6060871, at *3 (E.D. Cal. Oct. 14,

27   2020) ("Records of CDCR are subject to judicial notice as records not subject to reasonable dispute,

28   as are records of California state courts."); *Rodriguez v. Anderson*, No. EDCV 18-1181-JGB

1  (AGR), 2021 WL 2343346, at *3-4 (C.D. Cal. Mar. 31, 2021) (taking judicial notice of plaintiff's

2  parole eligibility date as shown by the CDCR's inmate locator tool).

3  **B.    Claims under 42 U.S.C. § 1983**

4          1.    *Claim 1: Eighth Amendment Right Against Excessive Force*

5          A correctional officer engages in excessive force in violation of the Eighth Amendment if

6  he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate

7  for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security."

8  *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). Thus, when an officer is accused of using

9  excessive force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to

10 maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*,

11 503 U.S. 1, 6-7 (1992).  In making this determination, the court may consider (1) the need for

12 application of force, (2) the relationship between that need and the amount of force used, (3) the

13 threat reasonably perceived by the responsible officials, (4) the extent of injury suffered by the

14 inmate, and (5) any efforts made to temper the severity of a forceful response.  (*Id.* at 7).

15         While *de minimis* uses of physical force generally do not implicate the Eighth Amendment,

16 significant injury need not be evident in the context of an excessive force claim, because "[w]hen

17 prison officials maliciously and sadistically use force to cause harm, contemporary standards of

18 decency always are violated."  (*Id.* at 9).

19         Defendants contend that Plaintiff fails to allege facts sufficient to state an excessive force

20 claim against Officer Lwin.  (Doc. 7-1 at 10).  Defendants argue that there are no factual allegations

21 sufficient to show that "Officer Lwin maliciously and sadistically used force in response to inmate

22 Simmons's attack on [Plaintiff.]"  (*Id.* at 11).  Defendants contend that Officer Lwin's use of force

23 was necessary and reasonable under the alleged circumstances involving the use of a deadly weapon

24 as Plaintiff was the victim of a violent stabbing by inmate Simmons with a manufactured weapon.

25 (*Id.*).  Defendants contend Officer Lwin's decision to meet Simmons's continued deadly force

26 towards Plaintiff with less-than-lethal force in the form of a sponge round establishes that Officer

27 Lwin's use of the sponge round was proportional to the deadly and immediate threat Simmons

28 posed to Plaintiff.  (*Id.*).  Defendants further contend that Plaintiff's FAC is devoid of any

allegations as to whether Officer Lwin had the ability to temper the use of force before he responded to the attack. (*Id.* at 12). Defendants cite two cases—*Simmons v. Arnett*, 47 F.4th 927 (9th Cir. 2022), and *Brown v. McCullough*, 2:11-cv-00093 JAM JFM (PC), 2013 WL 3992186 (E.D. Cal. Aug. 1, 2013)—to support their contention that Officer Lwin did not maliciously and sadistically use force in response to the attack on Plaintiff. (*Id.* at 11). In response to Plaintiff's opposition, Defendants further contend that Plaintiff's reference to Officer Lwin supposedly being aggressive lacks any context, and this reference to an unknown interaction does not cure the absence of allegations suggesting that Officer Lwin acted disproportionately to save Plaintiff's life. (Doc. 11 at 4).

The allegations of Plaintiff's complaint address each of the five *Hudson* factors courts consider in determining whether excessive force was used in violation of the Eighth Amendment and whether that force applied was in a good-faith effort to maintain or restore discipline, or instead, maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Those allegations are that Officer Lwin "intentionally" launched a 40mm sponge projectile at Plaintiff (the non-aggressor in a violent prison assault) hitting him in the head and causing him to fall and visibly bleed from his head. While Plaintiff was observable in a pool of his own blood, Officer Lwin purposefully launched a second 40mm projectile at Plaintiff as he continued to be victimized during the assault, causing further harm. Plaintiff pleads the Officer Lwin was unusually aggressive towards Plaintiff without provocation based on their prior interactions and had a "vendetta against" him. These pleadings are sufficient to establish a juror could infer Defendants acted maliciously to harm Plaintiff when Defendants launched and struck Plaintiff (the non-aggressor) with a sponge projectile a second time after the first projectile struck Plaintiff and caused him to bleed and fall. *See Whitley*, 475 U.S. at 321-22.

Defendants' reliance and argument based on *Simmons v. Arnett* (*supra*) is not persuasive. That case came to the Court of Appeals on review of the district court's summary judgment ruling and the Court had the benefit of undisputed facts showing (1) the correctional officer was obscured and unable to target the aggressing inmate with his launcher, and (2) the officer acted to minimize harm to the non-aggressing inmate by aiming for his lower legs. *Simmons*, 47 F.4th at 931, 933.

Thus, whereas in *Simmons* the Court had evidence before it establishing that the officer did not act maliciously or sadistically, on a motion to dismiss, this Court considers only the allegations of the complaint. Defendants' related argument that Plaintiff did not plead whether Defendant "had the ability to temper the use of force" (Doc. 7-1 at 5-6) also misses the mark. While *evidence* that Officer Lwin acted to minimize harm (like the defendant in *Simmons*) would weigh in Defendants' favor on a motion for summary judgment, the mere absence from the pleadings of an allegation regarding employment of lesser force does not undermine the sufficiency of Plaintiff's complaint.

Accordingly, the undersigned finds that Plaintiff's factual allegations, taken in the light most favorable to him, plausibly allege an Eighth Amendment claim against Officer Lwin as they raise more than a sheer possibility that the force used by Officer Lwin was excessive and unnecessary under the circumstances and was not applied in a good-faith effort to restore discipline. *Erickson*, 551 U.S. at 94; *see Iqbal*, 556 U.S. at 678-79 (a complaint that "states a plausible claim for relief survives a motion to dismiss" and the plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully"); *Prado v. Gastelo*, No. 2:21-cv-05057-JAK (AFM), 2022 WL 20581969, at *5-6 (C.D. Cal. Mar. 24, 2022) (finding complaint plausibly stated an Eighth Amendment claim against prison officer based on allegations that officer shot plaintiff in the head with a sponge round while plaintiff was laying prone in a non-combative non-aggressive manner), *R&R adopted by* 2022 WL 20582023 (C.D. Cal. May 17, 2022).

## 2.    *Claim 2: Eighth Amendment Right to Medical Care*

The government has an obligation to provide medical care for "those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A person who is deliberately indifferent to a prisoner's serious medical needs violates the Eighth Amendment's prohibition on cruel and unusual punishment. (*Id*. at 104). Under 42 U.S.C. § 1983, to maintain an Eight Amendment deliberate indifference claim based on prison medical treatment, a plaintiff must first show a "serious medical need" such that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 896 (N.D. Cal. Apr. 18, 2013) (citing *Estelle*, 429 U.S. at 101). Second, a plaintiff must show that the defendant's response to the serious medical need was

1  deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). This second prong is

2  satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

3  medical need and (b) harm caused by the indifference. (*Id*.). Deliberate indifference may be shown

4  where prison officials "deny, delay or intentionally interfere with medical treatment." *Hutchinson*

5  *v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). In contrast, "mere negligence in diagnosing or

6  treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."

7  (*Id*.). "Instead, [an inmate-plaintiff] must show that [the accused correctional officer] acted with

8  'subjective recklessness,' analogous to how that phrase is used in criminal law." *Simmons*, 47 F.4th

9  at 934 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). A plaintiff "need not show his

10 harm was substantial; however, such would provide additional support for the [plaintiff's] claim

11 that the defendant was deliberately indifferent to his needs." *McGuckin v. Smith*, 974 F.2d 1050,

12 1061 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133

13 (9th Cir. 1997) (en banc).

14       Defendants contend that Plaintiff fails to allege facts sufficient to state a deliberate

15 indifference claim against Officer Lwin, specifically in failing to allege facts to show that Officer

16 Lwin "could have done anything to respond to [Plaintiff's] claimed injury." (Doc. 7-1 at 13).

17 Defendants assert that the "only conduct [Plaintiff] appears to allege as being deliberately

18 indifferent is Officer Lwin discharging a second sponge round, which supposedly further injured

19 [Plaintiff]." (*Id*.). However, Defendants argue that allowing Plaintiff to "proceed on a claim based

20 on these allegations … would [] severely undermin[e] the deference correctional officers are

21 entitled to when responding to injuries that occur during situations involving inmate violence."

22 (*Id*.). Defendants contend that under Plaintiff's allegations, if "Officer Lwin should not have acted

23 in response to knowing that inmate Simmons was actively stabbing [Plaintiff,]" he "would likely

24 be defending a lawsuit by [Plaintiff's] estate for failing to intervene and prevent [the attack]." (*Id.*

25 at 13-14). Defendants argue that Plaintiff fails to allege any alternative options Officer Defendants

26 had available to prevent Simmons from continuing to stab Plaintiff. (*Id.* at 14). Defendants further

27 contend that Plaintiff fails to allege that Officer Lwin "could provide immediate medical attention."

28 (*Id*.).

1    Plaintiff's allegations, taken as true, plausibly establish that Defendants knew Plaintiff was

2    at risk of a serious medical condition—the observable bleeding from his head caused by the sponge

3    round and the numerous physical injuries from the stabbing—and that they thereafter failed to

4    attend to his medical needs, resulting in further injury later requiring brain surgery.  Defendants'

5    argument that correctional officers are entitled to deference to prison policies and practices in

6    considering the reasonableness of a medical care decision (Doc. 7-1 at 5) is not supported with

7    authority that such deference must or should inform a court's analysis at the motion to dismiss

8    stage.  Indeed, the Court of Appeals' reasoning in the case Defendants cite in support of their claim

9    to deference to prison policies (*Chess v. Dovey*, 790 F.3d 961 (9th Cir. 2015)) reflects that the

10    applicability of deference to prison policies is a fact intensive analysis, which fundamentally is at

11    odds with the Court's role of considering only the pleadings in deciding a Rule 12(b)(6) motion.

12    The undersigned finds Plaintiff's allegations sufficiently state a claim of deliberate

13    indifference to his serious medical needs.  *Estelle*, 429 U.S. at 101; *see McGuckin*, 974 F.2d at 1061

14    ("show[ing] his harm was substantial … would provide additional support for the [plaintiff's] claim

15    that the defendant was deliberately indifferent to his needs.").

16    3.    *Qualified Immunity*

17    Defendants separately argue that Plaintiff's § 1983 claims should be dismissed because

18    Officer Lwin is entitled to qualified immunity.

19    a.    Applicable Law

20    "Qualified immunity protects government officials from liability for § 1983 claims unless

21    they violated a federal right and "the unlawfulness of their conduct was clearly established at the

22    time." *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) (quotation omitted).  The Supreme

23    Court has set forth a two-part analysis for resolving government officials' qualified immunity

24    claims: (1) did the government official violate a federal statutory or constitutional right, and (2)

25    was the unlawfulness of the official's conduct "clearly established at the time."  (*Id.*) (quoting *Dist.*

26    *of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)).

27    Under the first prong of the analysis, "whether a constitutional right was violated … is a

28    question of fact."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009);

see *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of the qualified immunity analysis, the court considers whether the facts show a violation of a constitutional right).  In contrast, "the 'clearly established' inquiry is a question of law that only a judge can decide."  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'"  *Wesby*, 583 U.S. at 63 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).  Stated differently, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted).  A § 1983 plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.  *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) ("There is no analogous burden on § 1983 defendants to find factually on-point cases clearly establishing the lawfulness of an officer's actions. Nor must § 1983 defendants come forward with precedent showing that the unlawfulness of their conduct was not clearly established."); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

"For a constitutional right to be clearly established, a court must define the right at issue with 'specificity' and 'not … at a high level of generality.'"  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021).  When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the alleged violation.  *See Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1092–93 (9th Cir. 1998).

"The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage of litigation."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).  However, the Ninth Circuit has found that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special

problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal citation omitted). "When determining claims of qualified immunity at the motion-to-dismiss stage, we take the well-pleaded facts in the complaint as true." *Chavez v. Robinson*, 12 F.4th 978, 995 (9th Cir. 2021) (citing *Keates*, 883 F.3d at 1235). Given the special problems presented in resolving qualified immunity as a grounds for dismissing a claim, a court may deny a qualified immunity defense without prejudice and, after further factual development, a defendant may re-raise the qualified immunity issue "at summary judgment or at trial." *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999); *Keates*, 883 F.3d at 1235 ("[A] decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions."); *see, e.g., Treglia v. Kernan*, No. C-12-2522 LHK (PR), 2013 WL 4427253, at *3 (N.D. Cal. Aug. 15, 2013) (denying a motion to dismiss based on qualified immunity without prejudice).

b.    <u>Analysis</u>

As noted *supra*, the undersigned has found that Plaintiff's factual allegations, taken as true, are sufficient to plausibly allege Eighth Amendment claims of excessive force and deliberate indifference to serious medical needs. Thus, the FAC passes the first step of the two-step inquiry for purposes of the qualified immunity analysis on both Eighth Amendment claims. *Waid*, 87 F.4th at 383. Accordingly, the undersigned proceeds to determine whether it would have been clear to any correctional officer, in the particular circumstances confronted by Defendants, that their actions were unconstitutional in light of the law that was "clearly established at the time" the actions were undertaken.

i.    **Eighth Amendment Excessive Force Claim**

To defeat Defendants' claim that they are entitled to qualified immunity from Plaintiff's excessive force claim, Plaintiff must demonstrate that it was clearly established Officer Lwin's

employment of force was excessive in violation of the Eighth Amendment.

Insofar as Plaintiff relies on *Bladen v. CDCR*, No. 5:20-cv-00878-MEM-FGJS, 2023 WL 8590460 (C.D. Cal. Sept. 26, 2023) to defeat qualified immunity (Doc. 10 at 10), the undersigned disregards that case for two reasons. First, the case was decided after the alleged incident here on January 2, 2023 (Doc. 6 ¶ 13), and, thus, could not have made it sufficiently clear to Officer Lwin at the time of his conduct that what he did violated Plaintiff's rights. *See City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 13 (2021). Second, *Bladen* is an unpublished and nonbinding district court opinion that, standing by itself, does not constitute either "controlling authority" or a "robust consensus of cases of persuasive authority" necessary to satisfy the "clearly established" standard. *Wesby*, 583 U.S. at 63.

Separately, while acknowledging it is not Defendants' burden in seeking dismissal on qualified immunity grounds to identify precedent showing that it was clearly established their conduct was lawful (*see Hopson*, 71 F.4th at 708), the undersigned rejects Defendants' argument that *Simmons v. Arnett* (*supra*) necessarily entitles them to qualified immunity. As noted above in finding Plaintiff plausibly alleges an excessive force claim, not only is *Simmons* factually distinguishable, but the issue of qualified immunity in that case (as with the other cases Defendants cite, *see* Doc. 7-1 at 10-11) was determined at the summary judgment stage and, thus, does not fully inform the undersigned's consideration of the issue in ruling on Defendants' motion to dismiss. *See Keates*, 883 F.3d at 1234; *O'Brien*, 818 F.3d at 936.

Taking the facts pleaded as true and in the light most favorable to Plaintiff, Officer Lwin repeatedly and intentionally targeted a non-aggressing inmate with a projectile weapon against whom he had a vendetta, even after the first projectile volley caused an injury resulting in the inmate laying in a pool of his own blood. Just as a correctional officer may not take punitive actions against a prisoner in violation of his First Amendment rights, nor may an officer retaliate against an inmate for whom he as a "vendetta" by engaging in excessive force. *See Chavez*, 12 F.4th at 1000 ("in the prison context, the 'prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes.'") (quoting *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005)). Under *Hudson v. McMillian* (*supra*), it was "sufficiently clear" (*see*

*Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021)) at the time of the incident that acting in furtherance of a vendetta in the manner Officer Lwin is alleged to have engaged in excessive force here violates Plaintiff's right to be free from excessive force because such force was not applied for a legitimate penological goal, but rather, in furtherance of malicious intent.

At this early stage of the proceedings, the undersigned cannot determine, "based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936. "It would be premature for the Court to make a factual determination on qualified immunity because the factual record has [no]t yet been developed." *Rhinehart v. Montgomery*, Case No. 22-CV-678-LAB-MDD, 2023 WL 2576773, at *4 (S.D. Cal. Feb 27, 2023), *appeal dismissed* 2023 WL 4056229 (9th Cir. 2023). "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien*, 818 F.3d at 936.

### ii.    Eighth Amendment Deliberate Indifference Claim

To defeat Defendants' claim that they are entitled to qualified immunity from Plaintiff's deliberate indifference to serious medical needs claim, Plaintiff must demonstrate that it was clearly established Officer Lwin's denial, delay or interference with Plaintiff's medical care violated the Eighth Amendment.

Taking the facts pleaded as true and in the light most favorable to Plaintiff, Officer Lwin observed Plaintiff laying in a pool of his own blood following his intentional striking of Plaintiff with a projectile sponge round to Plaintiff's head. Officer Lwin thereafter launched a second projectile that impacted Plaintiff while he was being stabbed by another inmate. And Officer Lwin "took no actions" to render or facilitate the provision of immediate medical assistance.

At the time of the incident, it was clearly established that a correctional officer may not "purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *See McGuckin*, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.").

Because Plaintiff's allegations squarely charge Officer Lwin with purposefully ignoring or failing to respond to his observable, serious physical injuries, and because there are plausible allegations that Officer Lwin acted will malicious intent (*i.e.*, further to his "vendetta" against

1  Plaintiff), Defendants are not entitled to qualified immunity at the motion-to-dismiss stage.

2  **C.    Claim III: Government Code § 845.6 Failure to Obtain Medical Care**

3  California Government Code Section 845.6 provides that a public employee may be liable

4  for failing to summon medical assistance to prisoners under certain circumstances. *Lawman v. City*

5  *and Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1150 (N.D. Cal. Feb. 5, 2016) (citing Cal. Gov.

6  Code § 845.6).  To state a claim under section 845.6, "a prisoner must establish three elements: (1)

7  the public employee knew or had reason to know of the need (2) for immediate medical care, and

8  (3) failed to reasonably summon such care."  (*Id*.).  "In this manner, section 845.6 imposes a

9  statutory duty to summon medical care."  (*Id.*).

10  As a prerequisite to filing suit for "money or damages" against a public entity, the California

11  Government Claim Act requires presentation of a claim to the public entity.  *General Sec. Services*

12  *Corp. v. Cnty. of Fresno*, 815 F. Supp. 2d 1123, 1131 (E.D. Cal. Sept. 2, 2011) (citing Cal. Gov.

13  Code § 945.4).  A notice of claim to a public entity must meet Government Code § 910's

14  requirements.  (*Id.* at 1132.  Among other things, § 910 requires a claimant to state the "date, place,

15  and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and

16  to provide a "general description of the ... injury, damage or loss incurred so far as it may be known

17  at the time of presentation."  Cal. Gov. Code § 910; *Stockett v. Ass'n of Cal. Water Agencies Joint*

18  *Powers Ins. Auth.,* 34 Cal. 4th 441, 445 (2004).

19  Plaintiff also must file the claim with the Victim Compensation and Government Claims

20  Board within six months of the cause of action accruing.  Cal. Gov. Code § 915(b).  Compliance

21  with the claim presentation requirement is an "element that a plaintiff is required to prove in order

22  to prevail."  *Del Real v. City of Riverside*, 95 Cal. App. 4th 761, 767 (2002).  As such, a plaintiff

23  must allege in his complaint "facts demonstrating or excusing compliance with the claim

24  presentation requirement."  *State of Cal. v. Super. Ct.*, 32 Cal. 4th 1234, 1243 (2004).  Accord,

25  *Joseph v. City of San Jose*, No. 23-15358, 2024 WL 4144077, at *3 (9th Cir. Sept. 11, 2024).

26  Failure to do so "is fatal to the cause of action and results in the dismissal of the state law claim."

27  *Bloodworth v. Krall*, No. 09-cv-2671-MMA-CAB, 2011 WL 1043726, at *7 (S.D. Cal. Mar. 22,

28  2011).

These statutes are not intended "to prevent surprise," rather they are intended to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007). "When a public entity receives a document which contains the information required by § 910 and is signed by the claimant [] as required by § 910.2, the public entity has been presented with a 'claim[.]'" *Phillips v. Desert Hosp. Dist.,* 49 Cal. 3d 699, 707 (1989). Because the claims statute is designed to give a public entity "notice sufficient for it to investigate and evaluate the claim ... the statute should not be applied to snare the unwary where its purpose is satisfied." *Stockett,* 34 Cal. 4th at 446. "Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements ... even though it is technically deficient in one or more particulars.'" *Sparks v. Kern Cnty. Bd. of Supervisors*, 146 Cal. App. 4th 794, 800 (2009) (citation omitted). However, the doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." (*Id.*) (quotation omitted).

Defendants contend that the Court should dismiss Plaintiff's Cal. Gov. Code § 845.6 claim because Plaintiff failed to comply with the claim presentation requirement by presenting to the Government Claims Board a claim for failure to furnish medical care for a prisoner in violation of that statute. (Doc. 7-1 at 18). Defendants note that Plaintiff does not reference any prison official's response to his claimed injury in his May 2023 government claim form. (*Id.* at 19 (citing Doc. 7-2, Ex. A)). Defendants contend that Plaintiff's allegations contained therein fail to state the factual basis for Officer Lwin, or any other correctional officer, knowing of Plaintiff's claimed immediate medical need and supposedly failing to take reasonable steps to summon medical care. (*Id.*). Defendants contend the Court should dismiss this § 845.6 claim without leave to amend because the period to comply with the claim-presentation requirement has expired, and thus amendment is futile. (*Id.* at 20).

Plaintiff contends he properly presented a government claim form. (Doc. 10 at 14). Plaintiff alleges in the FAC that he "presented a timely claim to the State of California on May 30, 2023

1    which was received by the State of California on June 01, 2023" and that he "filed the instant

2    lawsuit within six months of said date[,]" and thus he "complied with all applicable claim statutes."

3    (Doc. 6 ¶ 17).  Plaintiff contends his form is sufficiently specific as it names the "respective officer

4    by name and the State of California" and that he alleged a "deprivation of rights and protections

5    under the U.S. and California laws and Constitutions."  (Doc. 10 at 14).

6         Plaintiff's government claim form dated May 30, 2023, which the undersigned has

7    judicially noticed *supra*, provides in compliance with § 910's requirements: Plaintiff's name and

8    relevant addresses; the date of the incident ("1-2-23"); place of the incident (CCI Tehachapi,

9    "Facility 'A'; Housing Unit 4"); dollar amount of the claim ($20,000,000.00"); and a brief

10   description of injuries for which relief is sought ("brain damage; permanent injuries to head, body,

11   psyche; vi[olation] of statutory & civil rights").  (Doc. 7-2, Ex. A).  Plaintiff attaches to the form a

12   document that details the state agencies and officials against whom the claim is filed, including

13   Defendants State of California, CCI, Officer Lwin, and inmate Simmons, and other officers.  (*Id.*).

14   Plaintiff's attachment describes similar injuries as listed in the FAC and also the "deprivation of

15   rights and protections under U.S. and California laws and constitutions" and "other unascertained

16   injuries and damages."  (*Id.*).  Plaintiff details the circumstances that led to damage or injury as his

17   being "attacked by another inmate" and "indiscriminate and excessive force by prison guards."

18   (*Id.*).  Plaintiff explains the State is responsible for his injuries because state personnel were

19   working within the course and scope of their employment and at the direction of the state, and were

20   negligent in the hiring, training, supervising, and disciplining of its personnel.  (*Id.*).

21        However, merely alleging generally a "deprivation of rights and protections under the U.S.

22   and California laws and Constitutions" cannot be said to "provide the public entity sufficient

23   information to enable it to adequately investigate claims and to settle them, if appropriate, without

24   the expense of litigation."  *City of Stockton*, 42 Cal. 4th at 738.  Plaintiff's failure to allege any

25   facts that establish any of the elements to state a claim under § 845.6, whether describing his need

26   for immediate medical care or for Defendants' failure to reasonably summon such care that resulted

27   in his claimed injuries, is a "total omission of an essential element from the claim" such that

28   Plaintiff fails "to comply meaningfully with the statute."  *Sparks*, 146 Cal. App. 4th at 800; *see,*

1    *e.g., Nelson v. State of Cal.*, 139 Cal. App. 3d 72, 80 (1982) (affirming State's demurrer against §

2    845.6 claim where plaintiff's claim "does not recite that his injury was the result of a failure on the

3    part of any employee to summon immediate and competent medical care[.]").   In *Nelson*, the

4    California Court of Appeals rejected the plaintiff's § 845.6 claim where he affirmatively alleged

5    that his injuries were the "result of the failure of the Department of Corrections to diagnose and

6    treat or allow [him] to maintain his ongoing medical care."   *Nelson*, 139 Cal. App. 3d at 80.   The

7    court held that the failure to prescribe or provide correct medication cannot be equated to a failure

8    to summon medical care as under § 845.6.   (*Id.*).

9          Here, Plaintiff's claim alleges only a general violation of his constitutional rights, and

10    nothing related to the failure by any correctional officer to summons medical care.   Thus, Plaintiff

11    has failed to comply with the government claim statute's claim-presentation requirement.   "Failure

12    to meet this requirement subjects a claim to dismissal for failure to state a cause of action."   *Mohsin*

13    *v. Cal. Dep't of Water Resources*, 52 F. Supp. 3d 1006, 1018 (E.D. Cal. Oct. 1, 2014) (citing *Yearby*

14    *v. Cal. Dep't of Corr.*, No. 2:07–CV–02800, 2010 WL 2880180, at *4–5 (E.D. Cal. July 21, 2010)).

15          Given the deficiencies of Plaintiff's claim form, because it would be impossible to comply

16    with the claim presentation requirement now given the time to submit the claim has run, the

17    undersigned will recommend this claim be dismissed without leave to amend.   *See* Cal. Gov. Code

18    § 911.2(a) ("A claim relating to a cause of action … for injury to person … shall be presented …

19    not later than six months after the accrual of the cause of action.   A claim relating to any other cause

20    of action shall be presented … not later than one year after the accrual of the cause of action.");

21    *Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be

22    granted unless the district court determines that the pleading could not possibly be cured by the

23    allegation of other facts.") (internal quotation marks omitted); *accord Machado v. Cal. Dep't of*

24    *Corrs.*, No. CV 13-1703-CAS DFM, 2013 WL 6860613, at *14 (C.D. Cal. Dec. 30, 2013)

25    (dismissing § 845.6 claim without leave to amend where "[n]othing in Plaintiff's allegations

26    suggest that [defendant] knew that [Plaintiff] needed immediate medical attention and failed to take

27    reasonable action to summon such medical care" and "permitting additional amendment would

28    only serve to prevent the case from moving forward[.]").

1    **D.    Claim V:  State Law Negligence Claim**

2    The Prison Litigation Reform Act ("PLRA") does not apply to state law claims. *See* 42

3    U.S.C. § 1997e(a) (requiring exhaustion of administrative remedies for actions pursuant to § 1983

4    or other federal laws); *Franklin v. McDonnell*, No. CV 16-1192-CAS (AGR), 2018 WL 6991084,

5    at *7 (C.D. Cal. Nov. 20, 2018) (PLRA does not apply to state law negligence claim).  However, a

6    prisoner must comply with the exhaustion requirements under California state law as a prerequisite

7    to filing suit asserting claims arising under state law. *Velazquez v. Cnty. of Orange*, Case No. CV

8    13-01012 MMM (MRWx), 2013 WL 12128798, at *4 (C.D. Cal. Dec. 2, 2013) (citing *In re Dexter*,

9    25 Cal. 3d 921, 925 (1979)); *Wright v. State of Cal.*, 122 Cal. App. 4th 659, 664-65 (2004) ("[A]

10   prisoner must exhaust available administrative remedies before seeking judicial relief [under

11   California state law].").  Additionally, California's exhaustion requirement is jurisdictional rather

12   than an affirmative defense as it us under the PLRA.  *Upshaw v. Super. Ct.*, 22 Cal. App. 5th 489,

13   505-06 (2018); *Rojo v. Kliger*, 52 Cal.3d 65, 84-85 (1990) ("exhaustion of the administrative

14   remedy is a jurisdictional prerequisite to resort to the courts[.]"); *see, e.g.*, *Armstrong v. Smalls*,

15   No. 11–0401–WQH–WVG, 2011 WL 5570081, *6-7 (S.D. Cal. Aug. 22, 2011) (dismissing

16   prisoner's state law claims for failure to exhaust for the same reasons that dismissal of federal

17   claims under the PLRA was warranted); *Washington v. Guerra*, No. CV 15-06919-VAP (DTB),

18   2017 WL 1197861, at *6 (C.D. Cal. Jan. 31, 2017) (dismissing state law claim for failure to exhaust

19   administrative remedies), *R&R adopted by* 2017 WL 1197667 (C.D. Cal. Mar. 29, 2017).

20   Defendants contend that Plaintiff cannot assert a state law cause of action against Officer

21   Defendants because he failed to plead exhaustion of state administrative remedies.  (Doc. 7 at 20-

22   21).  Defendants contend Plaintiff's failure to affirmatively plead exhaustion therefore bars

23   litigation of his state claims against the State of California and Officer Lwin.  (*Id.*).

24   Plaintiff contends that he was no longer a prisoner at the time he filed suit and is therefore

25   not required to plead exhaustion of state administrative remedies as a prerequisite to bringing suit

26   on his state claims.  (Doc. 10 at 15) (citing, *inter alia*, *Fanaro v. Cnty. of Contra Costa*, No. 3:19-

27   CV-03247-WHO, 2021 WL 2207363 (N.D. Cal. June 1, 2021)) (discussed *infra*).

28   In reply, Defendants argue that Plaintiff concedes that he failed to plead exhaustion.  (Doc.

11 at 8).  Defendants contend that the Court should reject Plaintiff's argument that he need not exhaust because he was no longer a prisoner when he filed suit because Plaintiff, as a parolee currently under the custody or control of the State, is subject to the exhaustion requirements.  (*Id.* at 9).  Defendants cite to various provisions of Title 15 of the California Code of Regulations[2] to show Plaintiff, as a parolee, is a "supervised person" and a "claimant" that is subject to state exhaustion requirements under § 3481(a).  (*Id.*) (citing 15 Cal. Code Reg. §§ 3000 ("supervised person" includes offender "on non-revocable parole"), 3480(b)(6) ("claimant"), 3481(a) (claimant subject to exhaustion requirements)).

Under the version of § 3481(a) that was in effect at the relevant time, the statute provides for a claimant's ability to submit a written grievance to the department subject to the requirements in § 3482.  15 Cal. Code Regs. § 3481(a) (Effective: January 5, 2022 to December 31, 2024).  § 3482 provides for a supervised person's submission of a grievance, and subsection (b) provides that "[a] claimant [such as a supervised person] shall submit a claim within 60 calendar days of discovering an adverse policy, decision, action, condition, or omission by the department.  Discovery occurs when a claimant knew or should have reasonably known of the adverse policy, decision, action, condition, or omission."  15 Cal. Code. Regs. § 3482(a) & (b) (Effective: January 5, 2022 to December 31, 2024).

Taken together, these statutes demonstrate that administrative remedies are available to supervised persons, including parolees such as Plaintiff, who are subject to proscribed time constraints for submitting a grievance.  In *Fanaro*, the Court stated: "Fanaro filed his complaint *after* he was released, so he was not required to exhaust.  Neither [the Court] nor the parties have found a definitive decision on the issue, but all traditional considerations lead to the conclusion that the exhaustion requirement no longer applies once a plaintiff is no longer serving his sentence.  The

---

[2] Defendants cite to provisions of Title 15 of the California Code of Regulations that were in effect from January 5, 2022, to December 31, 2024.  *See* 15 Cal. Code Reg. § 3480(a) (Effective: January 5, 2022 to December 31, 2024) ("The provisions of this Article shall apply to all incarcerated and supervised person grievances received by the Department of Corrections and Rehabilitation on or after January 5, 2022.").  That statute was revised effective January 1, 2025, but the revisions are inapplicable here.  *See* 15 Cal. Code Reg. § 3480(a) (Effective: January 1, 2025) ("The provisions of this Article shall apply to all grievances … on or after January 1, 2025.").

1  cases imposing the exhaustion requirement uniformly speak of 'prisoners' being required to exhaust

2  remedies." *Fanaro*, 2021 WL 2207363, at *16 (citing *Wright*, 122 Cal. App. 4th at 665).  Here,

3  Plaintiff is currently a parolee still "serving his sentence" out of incarceration.  *See* (Doc. 11 at 17,

4  Ex. A).  As a supervised person, *i.e.*, parolee, Plaintiff had administrative remedies available to him

5  and was subject to time constraints in grieving his claims.

6         Although Defendants do not cite any case where a court expressly held a parolee asserting

7  state law causes of action was subject to state exhaustion requirements, the undersigned concludes

8  that *Fanaro* is materially distinct and not persuasive here given the released inmate in that case was

9  not on parole.  As set forth above, California's regulatory scheme provides that supervised persons,

10  including parolees, have available to them administrative remedies that they must exhaust.  And as

11  Defendants correctly contend, Plaintiff failed to plead exhaustion of administrative remedies or a

12  valid excuse for his failure in doing so.  Thus, for the same reasons the undersigned found above

13  that amendment to Plaintiff's § 845.6 government claim is futile, the time has passed for Plaintiff

14  to file a grievance such that amending these claims to plead exhaustion is futile.  Thus, the

15  undersigned will recommend Plaintiff's state claims be dismissed without leave to amend.

16

17

18                    *Remainder of This Page Intentionally Left Blank*

19

20

21

22

23

24

25

26

27

28

### III.    ORDER, FINDINGS, AND RECOMMENDATIONS

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Defendants' requests for judicial notice (Docs. 7-2, 11 at 11-13) are GRANTED.

And **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss (Doc. 7) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, it is RECOMMENDED that:

   a. Defendants' motion to dismiss Plaintiff's Eighth Amendment claims (Claims I & II) for failure to state a claim and on a qualified immunity grounds be DENIED;

   b. Defendants' motion to dismiss Plaintiff's claim pursuant to Cal. Gov. Code § 845.6 (Claim III) be GRANTED and that claim be DISMISSED without leave to amend;

   c. Defendants' motion to dismiss Plaintiff's state law negligence claim (Claim V) for failure to exhaust state administrative remedies be GRANTED and that claim be DISMISSED without leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 13, 2025**

UNITED STATES MAGISTRATE JUDGE